ORIGINAL

FILED
JUN 2 5 2008
U.S. COURT OF FEDERAL CLAIMS

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

**MARIA SANDRA FERNANDEZ de IGLESIAS** )
)
**v.** ) No. 08-464 C
)
**THE UNITED STATES** )

**COMPLAINT**

COMES NOW, Maria Sandra Fernandez de Iglesias, Plaintiff herein, and complains of the Secretary of State of the United States of America, acting by the Contracting Officer of the Embassy of the United States of America at Mexico.

1. This Court has jurisdiction pursuant to the Contract Disputes Act of 1978 (41 U.S.C. 601-613).

2. The Contract Disputes Act of 1978 (41 U.S.C. 601-613) mandates the payment of money (including interest) in a contractor's claim against the United States.

3. On October 24, 1997, Lease No. 4128-861078-FBO was entered by Maria Sandra Fernandez de Iglesias and the United States. A copy of which is attached hereto as Exhibit 1.

4. On November 28, 2000 Plaintiff and the United States entered an agreement to renew the lease from 11/01/2000 through 10/31/2003. (Exhibit 2)

5. In September, 2003, Plaintiff spoke to Mr. Rogelio Martinez, an employee in the General Services Office at the U.S. Consulate in Juarez, Chih. Mex. Mr. Martinez told Plaintiff that the tenant wished to exercise

his option to enter into the second three year lease period provided in the original lease agreement, but before doing so the water cistern at the leased property must be replaced. The Consulate had previously demanded the removal of the cistern so as to have room in the garage to park a third vehicle and now wanted the cistern reinstalled.

6. In October, 2003, the water cistern was replaced and Plaintiff fully expected to receive a new lease agreement.

7. After repeated telephone calls to Rogelio Martinez regarding past due rent (rent had not been paid since October, 2003), on January 9, 2004 Plaintiff received a Memorandum of Agreement to renew the lease from 11/01/2003 through 02/29/2004. (Exhibit 3) Martinez claimed that by signing the agreement payment would be expedited. Plaintiff signed the renewal agreement, but did not receive payment.

8. The Defendant did not vacate the leased premises on February 29, 2004, but, instead, held over, retaining possession.

9. On April 13, 2004 Rogelio Martinez called Plaintiff and told her that he would be returning the house in two days (April 15, 2004). Plaintiff asked Martinez for the rent monies due since November 1, 2003. Martinez told Plaintiff the money would be paid later and told her she should trust the United States Government.

10. Plaintiff called Martinez told him that all further communications must be made in writing.

11. On or about the 20th of April, Arturo Iglesias (Plaintiff's spouse) received a telephone call from Rogelio Martinez and then from Robert Loveless, Contracting Officer at the U.S. Consulate in Cuidad, Juarez, Chih. concerning the Plaintiff's demand that communications be written. The Plaintiff's refusal to agree to verbal commitments led to an angry response by Loveless.

12. Arturo Iglesias immediately went to visit with his attorney, Michael Cohen, after the Loveless conversation. Cohen placed a telephone call to Loveless in an attempt to resolve the issue of the payment of the rental money to Plaintiff and to have the residence returned to Plaintiff.

13. On April 26, 2004 Attorney Cohen, received a facsimile, dated April 25, 2004, from Robert Loveless (Exhibit 4) with an attached Memorandum of Agreement to Renew Lease (signed only by Loveless) from March 1, 2004 through April 15, 2004 and a Termination and Acquittance of Lease dated 15 April, 2004 and signed only by Robert Loveless. Never, at any time prior, did Plaintiff receive either document.

14. On May 26, 2004, after numerous attempts at resolution, Plaintiff's attorney faxed a demand letter to Loveless setting out Plaintiff's position based upon the lease agreement and the applicable U.S. and Mexican law. Furthermore, a request was made for the inspection of the property and the opportunity to engage in settlement discussions. (Exhibit 5)

15. On May 27, 2004, a letter from Roberto Fernandez, attorney for the U.S. Consulate in Juarez, was received by Mr. Cohen which contained the same Termination and Acquittance previously sent by Mr. Loveless and, interestingly, a memorandum dated April 15, 2004 from Rogelio Martinez to Robert Loveless claiming to have arranged to meet with Plaintiff on April 15, 2004 to return the property and further claiming that Plaintiff failed to show and another memorandum dated February 27, 2004 from Rogelio Martinez claiming a notification letter was delivered to Plaintiff which she refused to sign. (Exhibit 6)

16. After Cohen received Fernandez' fax he spoke to Fernandez by telephone and it was agreed that Fernandez would try to resolve the issue with the Consulate.

17. From June 4, 2004 through August 20, 2004 Cohen sent repeated requests for resolution and, at the least, communication. (Exhibit 7)

18. In November, 2004 Cohen enlisted the aid of Congressman Silvestre Reyes in another attempt to resolve Plaintiff's dispute, or at the least, compel the Consulate to respond in some fashion.

19. On November 19, 2004 Congressman Reyes sent an inquiry to Paul V. Kelley, Assistant Sec. of State (Exhibit 8), to which Kelley responded on December 22, 2004 with information obtained from the same parties who caused the dispute in the first place and even went so far as to claim that the Consulate General had obtained local counsel, presumably

Roberto Fernandez (the same attorney who had not responded to Mr. Cohen's numerous communications since May of 2004.) (Exhibit 9)

20. There is virtually no contact made by any person representing the U.S. Consulate. Finally on October 10, 2005 Cohen contacted Rita Bopp, the new Contracting Officer. On October 14, 2005 Bopp responded with a promise to resolve the problem as soon as possible. (Exhibit 10)

21. On November 13, 2005 Cohen, having heard nothing from Bopp, sent another email reminding her that the Government continued to be in possession of the property and consequently the monies due to Plaintiff continued to accrue. (Exhibit 11)

22. On December 15, 2005 Cohen communicated by fax with attorney Roberto Fernandez requesting that he provide a letter previously promised which would indicate that Fernandez had the authority to represent the U.S. Consulate in mediation. Fernandez did not respond.

23. On January 24, 2006 Cohen once again wrote to Rita Bopp reminding her of the mounting damages and requesting mediation.

24. Numerous telephone calls, letters and emails have been sent to the Department of State, Congressman Reyes and even to the Office of the Inspector General in an effort to resolve this dispute.

25. Finally, in July, 2007 Attorney Cohen was able to communicate with Harrison Ford, the new Contracting Officer at the U.S. Consulate in Cuidad, Juarez, Chih.

26. On or about July 9, 2007 Arturo and Sandra Iglesias, Mr. Ford and Attorney Cohen met at the Consulate in Juarez.

26. On or about July10, 2007 the Iglesias, Mr. Ford and Attorney Cohen visited the leased Juarez residence and decided that a final inspection of the property before its return to Plaintiff would be appropriate.

27. On or about July 17, 2007 Plaintiff, Arturo Iglesias, Ford and Cohen returned to the leased property with an inspector provided by the Consulate. The residence appeared to be in good condition and showed no evidence of damage to the roof or the plumbing system.

28. On or about August 6, 2007 a Demand Pursuant to the Contract Disputes Act of 1978 was sent to Harrison Ford, Contracting Officer. (Exhibit 12)

29. The decision of the Contracting Officer was received on September 26, 2007. The Contracting Officer responded by reiterating the same false assertions of the Department of State and denying the claim. Contained within the decision was the promise that the keys to the premises and the garage door opener would be sent to Plaintiff's attorney via messenger. (Exhibit 13)

30. Ford, further, informed Plaintiff that he was leaving the consulate and referred her to Mr. Isiah Parnell at the U.S. Embassy in Mexico City.

31. On October 11, 2007 Plaintiff's attorney contacted Mr. Isiah Parnell since neither the keys to the premises nor the garage door opener

had been returned to Plaintiff. Therefore, the premises remained in the custody and control of the United States.

32. Finally, on October 16, 2007 the keys and garage door opener were received in the office of Plaintiff's counsel along with a check in the sum of $11,426.31 which reflected the amount determined by the Contracting Officer, Harrison Ford, to be the amount owed by the Government to Plaintiff.

33. On November 7, 2007 Plaintiff and Mr. Isiah Parnell, Minister Counselor for Management Affairs, U.S. Embassy, Mexico, met at the office of Plaintiff's counsel, Michael Cohen without resolving the dispute.

34. Pursuant to Article XVI of the subject lease agreement, Mexican law is applicable in this case.

35. Plaintiff was damaged by the United States since it consistently retained possession and control of the subject property until October, 2007 while failing to pay the rentals due, pay for the consumption of utilities or attempt to tender any of the demanded funds or respond with any counter of any nature to the demands for payment. Instead the United States pursued a course of non-responsiveness and stonewalling allowing the damages to accrue.

36. Because of the failure of the United States to respond to Plaintiff's reasonable demand for payment and in accordance with applicable Mexican law, including but not limited to Article 2328 *Codigo Civil del Estado de Chihuahua* provides as follows:

A. the United States must pay rent up to the date that possession of the property is relinquished (Art.2328 *Codigo Civil del Est. de Chih.*) and further provides that since proper notice of termination was never given, the lease was extended in four month increments with a 10% increase in rental for each renewal; and

B. since the leased property was actually 4,380.91 sq. ft. instead of the 1,658 sq. ft. reflected by the original lease agreement, Plaintiff bases the rental related to the extended lease upon the actual square footage since Plaintiff was denied the economic benefit of the entire square footage by the actions of the United States,

Plaintiff makes a demand of $506,162.39 for payment of rent. Plaintiff further claims, pursuant to Article 7 of the original lease agreement, $5,231.00 for consumption of utilities.

37. Plaintiff claims, pursuant to Article XVI of the Lease Agreement and applicable Mexican law, also include 20% attorney's fees of $102,278.68 for a total demand of $613,672.07 with pre-judgment and post-judgment interest.

**WHEREFORE, PREMISES CONSIDERED**, Plaintiff, Maria Sandra Fernandez de Iglesias, respectfully prays that the Defendant, the United States, be cited to appear and answer herein, and that upon final hearing of the cause, judgment be entered for the Plaintiff against Defendant in the amount of $613,672.07 as well as pre-judgment and post-judgment interest.

Respectfully submitted,

**THE LAW OFFICES OF MICHAEL COHEN**
5940 Via Cuesta Dr.
El Paso, Texas 79901
(915) 577-0757 (telephone)
(915) 577-0759 (facsimile)

Date: June 20, 2008

MICHAEL COHEN