# EXHIBIT 1

Lease No.: 4128-861078-FBO

Fiscal Data: ~~11/13/97 TR FMO: JAMIE L. SEALE 19 X~~0535.3 2128861078 2128 7430 2372

## LEASE AGREEMENT

between

**MRS. MARIA SANDRA FERNANDEZ DE IGLESIAS**

and

**THE UNITED STATES OF AMERICA**

### ARTICLE ONE: PARTIES

This lease is entered into this 24th day of October of 1997, by Mrs. Maria Sandra Fernandez de Iglesias, whose address is at 641 Wild Willow, El Paso, Tx. for herself, her heirs, executors, administrators, successors and assigns, hereinafter referred to as the "LANDLORD", and the United States of America, acting by Winkle W. Nemeth of the Embassy of the United States of America at Mexico City, hereinafter referred to as the "TENANT".

### ARTICLE TWO: DESCRIPTION OF PREMISES

he LANDLORD hereby leases to the TENANT the following described premises, together with their appurtenances:

A house located at: Alondiga de Granadita #7522, which includes: 3 bedrooms, 3 bathrooms, 1 half bathroom, 1 living room, 1 dining room, 1 kitchen, 1family room, 1 TV room, 1 laundry room, 1 maids quarters.

TOTAL NET: 1658 SQ. FT. (2)

to be used as a diplomatic establishment in Cd. Juarez and for such other purposes as the TENANT may desire.

An inventory of any mechanical and electrical equipment on the premises, ( hereinafter "Annex A" ), a condition reports of the premises, equipment, and furniture and furnishings provided by the LANDLORD, as they now exist, (hereinafter "Annex B"), and a scope of work listing items the LANDLORD agrees to repair, replace or add (hereinafter "Annex C"), all three of which shall be signed by both parties, are attached to and made part of this Lease. During the term of this Lease, as well as during the initial repairs and improvements made by the LANDLORD under Annex C, the LANDLORD agrees not to apply either exterior latex paints or mercury based interior latex paints to any surface on the premises.

### ARTICLE THREE: LEASE TERM

The term of this lease shall be for 3 years, beginning November 1, 1997 and ending October 31, 2000. Except that if the premises are not ready for occupancy in accordance with the conditions specified in article two and Annex C, the term shall not begin and rent shall not accrue under this Lease until the date the work has been completed and the TENANT, in writing accepts the premises as ready for occupancy.

### ARTICLE FOUR: LEASE RENEWAL

The lease is renewable by the TENANT under these same terms and conditions including rental for 2 further periods of 3 years, provided that written notice is given to the LANDLORD at least 30 days prior to the date this Lease or any extension of it would otherwise expire. (1)

**ARTICLE FIVE: PAYMENT**

The TENANT shall pay the LANDLORD for the premises rented and for other services provided at the following rate and terms:

From November 1, 1997 to an including October 31, 2000 rent will be $1800.00 U. S. Dollars per month to be paid bi-annually in advance.

All financial obligations of the TENANT resulting from this Lease are subject to the availability of funds appropriated annually by the Congress of the United States of America, Payments are to be made according with article 5 to the LANDLORD at the U.S. Consulate General in Cd. Juarez, Mexico.

**ARTICLE SIX: WARRANTIES**

The LANDLORD declares that he is the sole and lawful owner of the premises and that she is duly authorized and able to enter into this Lease and performs its obligations. The LANDLORD also warrants that the TENANT shall and may peaceably enjoy possession of the premises for the Lease term (and any extensions thereof), without any interruption or disturbance from the LANDLORD, or any other person claming by, from, through , or under the LANDLORD. The LANDLORD further declares that she will hold the TENANT free and harmless from any and all demands, claims, actions or proceedings by others in regard to the leased Premises.

The LANDLORD will handle and settle or otherwise dispose of all demands, claims, actions, or proceedings by others in respect of TENANT's right of quiet possession. In the event, however , that TENANT incurs expenses in defense of its right to quiet possession, the LANDLORD agrees to reimburse the TENANT cost for cost as soon as practicable after the TENANT's presentation of its claim or such expenses provided the TENANT has, before incurring such expenses, notified the LANDLORD in writing of the demand, claim, action or proceeding and LANDLORD has failed to take timely action to handle, settle or otherwise dispose of such demand, claim, action or proceeding.

The TENANT declares that the person executing this lease agreement on its behalf is a duly warranted contracting officer of the United States Government, possessing all requisite power and authority to enter into this lease agreement on behalf of the United States Government.

**ARTICLE SEVEN: LANDLORD RIGHTS AND RESPONSIBILITIES**

A. Right of Entry, For the purpose of maintaining the premises, LANDLORD reserves the right to enter the premises to inspect and make any necessary repairs, so long as such entry is at prearranged times, with the consent of the TENANT (which consent shall not be unreasonably withheld) and, at TENANT's discretion, in the presence of a TENANT employee.

B. LANDLORD-provided services. The LANDLORD shall furnish or otherwise provide to the TENANT during the lease terms the following:

Water, power, gas, sewage disposal and telephone service.

The TENANT will be financially responsible for the on-going payment of consumption charges for these services.

C. Maintenance Responsibilities. LANDLORD shall, at his own cost and expense, be responsible for all major maintenace, structural work and major repair including but not limited to maintenance and repair of structural elements and systems such as: walls, ceilings. roofs, floors, foundations, heat, ventilating and air-conditioning, plumbing and related fixtures, electrical, light fixtures, doors and windows, including glass replacement where the breakage is due to structural shifting, all LANDLORD-supplied equipment such as but not limited to generators, water filtration systems, and fire protection systems. LANDLORD agrees to repaint and/or repaper all interior surfaces every two years, to clean the water tanks and/or cisterns every year and to clean and/or sweep all chimneys every year, unless conditions warrant earlier attention. The LANDLORD acknowledges that keeping the premises in good repair and tenantable condition is essential to make them appropriate for use by the Government of the United States of America.

The LANDLORD will be responsible for any damages caused by the breakdown of these systems or any failure to maintain the systems discussed above. For any repairs which the LANDLORD does not promptly handle in this manner, the TENANT, after written notice to the LANDLORD, may undertake the repair at LANDLORD's expense. Any funds expended by the TENANT in this regard shall be deemed prepaid rent and a subsequent rental payment shall be reduced by this amount. Any prepaid rent under this Article shall accrue interest at the U. S. Government rate. Interest shall be on the date the tenant expends the funds under this Article and shall accrue until the date the next rental payment is due to the LANDLORD, at which time the interest due shall be deducted from the next rental payment. If all rental payments have been made, the LANDLORD will make a direct refund to the TENANT. LANDLORD shall not be responsible for interruptions in utilities, beyond LANDLORD's control, supplied by municipal or private sources.

D. Emergency Repairs. LANDLORD agrees to commence, carry out, and complete emergency repairs within 24 hours after receiving oral or written notice from the TENANT. For repairs which cannot be completed within 48 hours, the LANDLORD agrees to present a completion schedule for acceptance by the TENANT. For any emergency repairs which the LANDLORD does not handle in this manner, the TENANT may undertake the repair at LANDLORD's expense. For emergency repair that affects the life or physical safety of the occupants, or that will cause damage or loss to personal property, the TENANT may take immediate action without notifying the LANDLORD in advance. Any funds expended by TENANT in this regard shall be deemed prepaid rent and a subsequent rental payment shall be reduced by this amount. Any prepaid rent under this Article shall accrue interest at the U. S. Government rate. Interest shall be on the date the tenant expends the funds under this Article and shall accrue until the date the next rental payment is due to the LANDLORD, at which time the interest due shall be deducted from the next rental payments have been made, LANDLORD will make a direct refund to the TENANT.

E. Taxes, Fees, and Assessments. The LANDLORD accepts full and sole responsibility for the payment of all fees, taxes and other charges of a public nature which are or may be assessed against the Premises. All expenses, if any, incurred in connection with the execution or registration of this lease, including without limitation, notarial charges, registration charges, transaction taxes, stamp duties or other fiscal charges shall be paid by LANDLORD.

F. Claims. The LANDLORD accepts full and sole responsibility for any claims arising from the TENANT or from third parties for damage or injury sustained when the LANDLORD has failed to maintain or repair the Premises as required by this lease. The LANDLORD also accepts responsibility for damage or injury sustained by TENANT or third parties and resulting from the negligence and/or willful acts of the LANDLORD, landlord's agents and/or employees.

## ARTICLE EIGHT: TENANT RIGHTS AND RESPONSIBILITIES

The TENANT shall have the right, with the written consent of the LANDLORD, which consent shall not unreasonably be withheld, during the existence of this lease, to erect structures and additions, to make alterations, and/or attach fixtures, in or upon the premises hereby leased. Such fixtures, additions or structures placed in or upon or attached to the said premises shall be and remain the property of the TENANT and may be removed at the time of or within a reasonable time after the lease or any extension thereof expires or is terminated.

The TENANT shall, unless hereinafter specified to the contrary, maintain the said premises in good repair and tenantable condition during the continuance of this lease, except for reasonable and ordinary wear and tear, damage by the elements or circumstances over which the TENANT had no control. Any damage arising from the intentional acts or negligence of the LANDLORD, its agents or employees is similarly excepted.

## ARTICLE NINE: ASSIGNMENT AND SUBLEASE

The TENANT may at any time assign its interest in the Premises or any portion thereof or sublet the Premises any portion thereof to any party without the prior consent of the LANDLORD. If the LANDLORD assigns its rights and responsibilities under the lease to a third party, the TENANT may, within 60 days of becoming aware of the identity of the third party, terminate the Lease.

If the LANDLORD sells the Premises, or defaults under any mortgage, trust deed or trust indenture related to the Premises, and if a purchaser or mortgagee duly enters into possession of the Premises, the LANDLORD shall give to the TENANT written notice of the identity of such third party prior to the sales, transfer or assignment. The TENANT agrees to become the tenant of the purchase or mortgagee, unless the purchaser or mortgagee is a person or entity from whom TENANT may not lease under applicable laws of the United States or for essential security or foreign policy reasons. If the purchaser or mortgagee is unacceptable to the TENANT for any of the foregoing reasons, the TENANT may, within 60 days of the receipt of the LANDLORD's notice, terminate this Lease by giving at least 30 days' prior written notice of termination.

**ARTICLE TEN: INSURANCE**

LANDLORD shall bear responsibility for all risk of loss or damage to the premises, for the entire term of this Lease, arising from any causes whatsoever with or without the fault of the LANDLORD including but not limited to fire; lightning; storm; tempest; explosion; riot; civil commotion; bursting or overflowing of water tanks; apparatus or pipes; boiler or machinery; flood; labor disturbance; earthquake; malicious damage or any other casualty or act of God. LANDLORD shall adequately insure the property against fire and all other risks enumerated above and normally insured under standard coverage; LANDLORD shall also carry adequate personal injury liability insurance on all areas of the property to cover all risks for which he is responsible. Each party, respectively, shall be liable for damages to the leased premises caused by its own fault or negligence, or that of its agents and/or employees. Evidence of LANDLORD's insurance coverage shall be furnished to the TENANT within 45 days after parties sign the Lease agreement, and the TENANT reserves the right to ask in intervals thereafter for proof that the policy remains in force.

**ARTICLE ELEVEN: PURCHASE OPTION**

The LANDLORD hereby grants to the TENANT, in consideration of this Lease and the rental rates agreed to above, a firm option to purchase, in fee simple absolute and free of all encumbrances, the Premises covered by this Lease, including land, improvements and all appurtenances.

This option to purchase shall continue open and in full force for the basic term as granted in this lease and any extensions thereof. If and when the TENANT exercises the said option to purchase, the LANDLORD covenants and agrees to convey to the United States Government an unencumbered fee simple absolute title (complete and perpetual ownership) to the premises covered by this lease, including the land, improvements and all appurtenances, by deed with covenant of warranty and covenant against encumbrances.

**ARTICLE TWELVE: LANDLORD's DEFAULT**

In the event LANDLORD fails to fulfill any obligations under this lease, and where this lease specifically provides no other remedy for such failure, the TENANT is entitled either to terminate this lease, or, at its option, to take any measures which it deems necessary to establish the conditions ontemplated by this agreement at the entire expense of the LANDLORD. TENANT will notify the LANDLORD in writing of its intention to take ction in accordance with this Article prior to taking such action.

**ARTICLE THIRTEEN: DESTRUCTION OF PREMISES**

Whenever the leased premises or any essential part thereof shall be destroyed or rendered unfit for further tenancy through fire, vandalism, earthquake, flood, storm, war, civil disturbance, or other similar casualty, this lease shall, at the option of the TENANT, immediately terminate. In case of partial destruction or damage, this lease may be terminated in whole or in part at TENANT's option. Should TENANT exercise its option, it shall provide at least twenty days' written notice to the LANDLORD, and no rent shall accrue to LANDLORD after such termination.

If the lease is terminated in whole or in part, LANDLORD shall within 45 days of termination refund any advance rental payments in excess of rental liabilities accrued to the date of termination. Should the TENANT elect ~~to~~ remain in premises rendered partially untenantable, a proportionate rebate or reduction of prevailing rental payments will be allowed and will be reflected in an amendment to this Lease to be signed within two months after the damage occurs.

**ARTICLE FOURTEEN: TERMINATION**

It is understood and agreed that during the life of the lease the occupant should either voluntarily or mandatorily transfer out of Cd. Juarez, Chih., Mexico the TENANT reserves the right to terminate this lease upon giving notice in writing to the LANDLORD thirty days in advance, without the LANDLORD having right to any payment other than for rental to the date the TENANT surrenders the premises. It is further understood and agreed that in case the TENANT decides to remove his establishment from Cd. Juarez, Chih., Mexico or change the grade thereof, or in the event that the United States of America acquires its own property in Cd. Juarez, Mexico the TENANT shall be at liberty to terminate this lease upon giving written notice 30 days in advance, without the LANDLORD having the right to any payment other than rental to the date the TENANT surrenders the premises. The LANDLORD will not be responsible for any additional fees or charges for this option.

The LANDLORD further agrees to make a pro rata refund of any rent payments made for periods beyond the date the TENANT surrenders the premises in pursuance of any of the TENANT's termination rights as contained in this lease.

## ARTICLE FIFTEEN: DISPUTES RESOLUTION

This Lease shall be executed in both English and Spanish. In the event that any disputes arise concerning the text of this lease, the English version controls. Any dispute arising between the parties hereto concerning this lease which cannot be resolved in negotiations between the LANDLORD and TENANT shall be settled in accordance with the dispute settlement provisions which follow:

1. Contract Disputes Act.

(A) This lease agreement is subject to the Contract Disputes Act of 1978 (41 U. S. C. 601-613).

(B) "Claim", as used in this clause, means a written demand or written assertion by the LANDLORD or TENANT seeking, as a matter of right, the payment of money in a sum certain, the adjustment or interpretation of the lease terms, or other relief arising under or relating to this lease, A "claim arising under the lease," unlike a claim relating to the lease, is a claim that can be resolved under an article of this lease agreement that provides for the relief sought by the claimant. However, a written demand or written assertion by the LANDLORD seeking the payment of money exceeding US $50,000 is not a claim until certified as required by subparagraph (C) (2) below. A voucher, invoice, or other routine request for payment that is not in dispute when submitted is not a claim. The submission may be converted to a claim under the Act, by complying with the submission and certification requirements of this clause, if it is disputed either as to liability or amount or is not acted upon within a reasonable time.

(C) (1) A claim by the LANDLORD shall be made in writing and submitted to the TENANT's Contracting Officer for a written decision. A claim by the TENANT against the LANDLORD shall be subject to written decision by the TENANT's Contacting Officer.

(2) For LANDLORD claims exceeding US $50,000, the LANDLORD shall submit with the claim a certification that-

(i) The claims is made in good faith;

(ii) Supporting data are accurate and complete to the best of the LANDLORD's knowledge and belief; and

(iii) The amount requested accurately reflects the lease agreement adjustment for which the LANDLORD believes the TENANT is liable.

(3) (i) If the LANDLORD is an individual, the certification shall be executed by that individual.

(ii) If the LANDLORD is not an individual, the certification shall be executed by an official or general partner of the LANDLORD having overall responsibility for the conduct of the LANDLORD's affairs.

(D) For LANDLORD claims of US $50,000 or less the TENANT's Contracting Officer must, if requested in writing by the LANDLORD, renter s decision within 60 days of the request. For LANDLORD-certified claims over US $50,000, the TENANT's Contracting Officer must, within 60 days, decide the claim or notify the LANDLORD of the date by which the decision will be made.

(E) The TENANT shall pay interest on the amount found due and unpaid from

(1) the date the TENANT's Contracting Officer receives the claim (properly certified if required), or

(2) the date payment otherwise would be due, if that date is later, until the date of payment. Simple interest on claims shall be paid at the rate, fixed by the U.S. Secretary of the Treasury as provided in the Act, which is applicable to the period during which the TENANT's Contracting Officer receives the claim, and then at the rate applicable for each 6-month period as fixed by the U.S. Treasury Secretary during the pendency of the claim.

(F) The LANDLORD shall proceed diligently with performance of this lease, pending final resolution of any request for relief, claim, appeal, or action arising under or relating to the lease, and comply with any decision from the TENANT's Contracting Officer.

In the event that both Parties have complied fully with all these provisions, but one of the Parties is dissatisfied with the final decision, the aggrieved Party may, at its option, either appeal the decision to the U.S. Armed Services Board of Contract Appeals or file a suit in the U.S. Court of Claims.

## ARTICLE SIXTEEN: CHOICE OF LAW

The terms of this lease shall be construed in accordance with the local laws governing the site of the premises leased hereunder.

(1)

**ARTICLE SEVENTEEN: SCOPE OF AGREEMENT/LEGAL CONSTRUCTION**

This lease cancels all other agreements which the parties may have previously entered into which relate in any way to the lease premises, and this written agreement constitutes the entire understanding of the parties. Oral discussions and representations made during negotiation of this lease shall not be contoured to be terms of this lease. Any changes, variations or modifications of the terms of this lease shall not be valid unless made in writing and signed by both parties hereto. For the purposes of this Paragraph, only the signature of a Contracting Officer at the U.S. Embassy in Mexico City shall be deemed valid and binding as against TENANT.

Neither failure of either Party to insist upon strict performance of any agreement, term, covenant, or condition hereof, nor failure of either Party to exercise any right or remedy consequent upon a breach thereof, shall constitute a waiver of any breach or a waiver of such agreement, term, covenant or condition in the future.

An invalidation of one of the clauses of this Lease agreement shall not be grounds for invalidation of any other clauses.

**ARTICLE EIGHTEEN: NOTICES**

All notices under this Lease agreement, other than legal service of process, shall be delivered to the persons at the addresses set forth below:

For the LANDLORD:
**Sra. Maria Sandra Fernandez de Iglesias**
641 Wild Willow
El Paso, Tx.

For the TENANT:
**Winkle W. Nemeth**
Contracting Officer, U. S. Embassy
Paseo de la Reforma 305

Legal service of process upon the TENANT shall be made through the Ministry of Foreign Affairs in accordance with the provisions of the Vienna Convention on Diplomatic Relations.

IN WITNESS WHEREOF, the parties have affixed their signatures this 24th day of October of 1997.

**ANDLORD:**

*Name*

Sra. Maria Sandra Fernandez de Iglesias

**TENANT:**

*United States of America*

By Winkle W. Nemeth
Contracting Officer
at U. S. Embassy Mexico City

Brian W. Wilson
(Post Housing Officer)

Edward Lennon
(Regional Security Officer)

Jamie L. Seale
(Financial Management Officer)

ASSIGNED TO: Lawrence Kay
CAL DATA 11/13/97 TR FMO: JAMIE L. SEALE 19 X0535.3 2128861078 2128 7430 2372