# In the United States Court of Federal Claims

### No. 08-464C

### (Filed December 22, 2010)

```
* * * * * * * * * * * * * * * * * * * *
MARIA SANDRA FERNANDEZ    *
DE IGLESIAS,              *   Breach of Express Contract; Contract
                         *   Disputes Act, 41 U.S.C. §§ 601–613;
        Plaintiff,       *   Summary Judgment, RCFC 56(c);
                         *   Foreign Law, RCFC 44.1; Interest on a
    v.                   *   Judgment, 28 U.S.C. § 2516(a);
                         *   Attorney's Fees; Equal Access to
THE UNITED STATES,       *   Justice Act, 28 U.S.C. § 2412; Motion
                         *   to Amend Complaint, RCFC 15(a).
        Defendant.       *
* * * * * * * * * * * * * * * * * * * *
```

*Michael Cohen*, Law Office of Michael Cohen, El Paso, Texas, attorney of record for plaintiff, and *Blake W. Barrow*, attorney at law.

*Scott T. Palmer*, U.S. Department of Justice, Civil Division, with whom was *Assistant Attorney General Tony West*, for defendant. *Jeanne E. Davidson*, Director, and *Reginald T. Blades, Jr.*, Assistant Director.

## OPINION AND ORDER

*Futey*, **Judge**.

This matter comes before the Court on the motion of defendant, the United States, for partial summary judgment, under Rule 56 of the Rules of the United States Court of Federal Claims ("RCFC"). Defendant leased a residence in Juárez, Chihuahua, Mexico from plaintiff, Maria Sandra Fernandez de Iglesias. According to plaintiff, defendant failed to vacate at the end of the lease, and plaintiff demands compensation for the amount of time defendant held over.

The question of when defendant vacated the premises is not at issue in this motion. Instead, defendant seeks resolution of four legal issues. Under Mexican law, plaintiff claims two upward adjustments in the amount of monthly rent. The first adjustment is loosely based on a statute that allows a landlord to increase the rent if a tenant extends a lease. The second adjustment is based on plaintiff's belief that rent may be adjusted upwards if the actual square footage of a

residence exceeds the square footage stated in the lease.  The final two issues in the motion are based on domestic law and concern the amount of judgment interest and attorney's fees plaintiff would be due, if she prevails.

Additionally, plaintiff moved on November 12, 2010 for leave to amend her complaint.  Defendant filed a response in opposition on November 26, 2010, and plaintiff replied on December 6, 2010.

I.    Background

A.    *The Original Lease*

The parties executed a lease on October 24, 1997 for a residence located in Juárez, Chihuahua, Mexico, with a monthly rent of $1,800.  The lease ran from November 1, 1997 to October 31, 2000 and included an option for the tenant to renew the lease "under the[] same terms and conditions including rental" for two additional periods of three years each.[1]  In order to exercise this option, the tenant was required to give the landlord written notice at least thirty days prior to the expiration of the lease.

The lease covers a "house . . . which includes: 3 bedrooms, 3 bathrooms, 1 half bathroom, 1 living room, 1 dining room, 1 kitchen, 1 family room, 1 TV room, 1 laundry room, 1 maids [sic] quarters. TOTAL NET: 1658 SQ. FT."[2]  Plaintiff alleges that the actual size of the property was much larger: 4,380.91 square feet.

The lease contains two other relevant provisions.  Under Article 15, disputes are subject to the procedures of the Contract Disputes Act of 1978 ("CDA"), 41 U.S.C. § 601 et seq. (2006), and interest on a judgment is set at the standard CDA rate.  A choice of law provision in Article 16 specifies that "[t]he terms of this lease shall be construed in accordance with the local laws governing the site of the premises leased hereunder."[3]  Since the premises are located in the state of Chihuahua, Mexico, those laws apply to construction of the lease.

B.    *Renewals of the Lease and Defendant's Alleged Failure to Vacate*

Defendant has twice renewed the lease.  The parties first renewed the lease on November 28, 2000, and agreed to extend the lease from November 1, 2000 through October 31, 2003.  This extension was "under the same terms and conditions" and at the same level of rent as the original lease.[4]  After this renewal term expired, the parties again agreed to renew the lease, and, on January 9, 2004, executed a renewal for the period of November 1, 2003 through February 29,

---

[1] Compl. Ex. 1, at 1.
[2] *Id.*
[3] *Id.* at 5.
[4] Compl. Ex. 2, at 1.

2004. This renewal also kept the rent at $1,800, although Contracting Officer Harrison Ford later found that defendant failed to pay rent for this second renewal period.[5]  Both renewals allowed defendant to terminate the lease for convenience "at any time" with thirty days' notice.[6]

Defendant unsuccessfully attempted to renew the lease for a third time. According to plaintiff, on April 26, 2004, Robert Loveless, defendant's local contracting officer, faxed plaintiff two documents. The first, a Memorandum of Agreement to Renew Lease, contained a renewal agreement for the period of March 1, 2004 through April 15, 2004; Loveless had signed this document and left a blank for plaintiff to sign. The second, a Termination and Acquittance of Lease, stated that the lease had been terminated and the premises returned as of April 15, 2004.  Loveless had also signed this document and left a blank for plaintiff's signature. Defendant contends that plaintiff did not receive the renewal agreement before April 26, 2004 because plaintiff refused to accept delivery of the agreement on February 27, 2004.

On April 13, 2004, Rogelio Martinez, one of defendant's employees, told plaintiff the property would be returned on April 15, 2004. Plaintiff asked when rent would be paid and was told it would be paid later. Plaintiff then demanded that all further communications be made in writing. Defendant asserts that it did actually vacate the premises on April 15, 2004, but admits that the keys and garage door opener were not returned until October 16, 2007.  According to defendant, it was unable to return these earlier because plaintiff refused to accept possession of the premises, but plaintiff disputes this.

Beginning in April 2004, plaintiff made numerous demands for unpaid rent from the government. On August 23, 2004, plaintiff submitted a CDA claim for $26,200, which the contracting officer apparently failed to answer.[7]  Plaintiff also made contact with numerous officials to attempt to resolve the dispute, including multiple contracting officers at the consulate in Juárez and United States Congressman Silvestre Reyes, who then contacted Assistant Secretary of State Paul V. Kelley.

After a series of mostly unproductive communications between the parties regarding the unpaid rent, plaintiff's attorney, Michael Cohen, met with Contracting Officer Harrison Ford at the United States Consulate in Juárez in July 2007. Later that month, Ford, Cohen, and an inspector visited the property, which appeared in good condition. In August 2007, plaintiff filed a second CDA claim and sent Ford a demand for payment of $613,672.07. Ford denied all but $11,426.31 of this claim on September 26, 2007. He did allow a claim for rent from November 1, 2003 through April 15, 2004, along with interest on that unpaid rent. Ford found that the government attempted to return the premises on

---

[5] *See* Compl. Ex. 13, at 2.
[6] Compl. Ex. 2, at 1; Compl. Ex. 3, at 1.
[7] *See* Compl. Ex. 13, at 2.

April 15, 2004 but plaintiff refused to accept delivery of the premises or payment for rent due. The decision informed plaintiff of her right to appeal to the Court of Federal Claims within twelve months of the decision. On October 16, 2007, plaintiff received a check for $11,426.31, as well as the keys to the property.

> C.    *Procedural History*

Plaintiff filed suit in the Court of Federal Claims on June 25, 2008. After some discovery, defendant filed on August 7, 2009 the summary judgment motion presently before the Court. Plaintiff filed a response objecting to summary judgment on October 22, 2009, to which defendant replied on November 6, 2009. Plaintiff, without leave of Court, filed a sur-reply on November 23, 2009, which the Court allowed to be filed the following day. At plaintiff's request, each party took the deposition of the opposing expert, and the parties filed supplemental briefs after those depositions. Oral argument was held on July 8, 2010. Following oral argument, the Court encouraged the parties to agree on a neutral, third-party expert on Mexican law, but those efforts proved fruitless.[8]

II.    Motion for Partial Summary Judgment

Defendant has moved for summary judgment on four of plaintiff's six claims. In her complaint, plaintiff requested (1) compensation for unpaid rent, (2) compensation for unpaid utilities, (3) multiple ten percent increases in rent due to a provision of Mexican law, (4) an increase in rent due to an alleged discrepancy in square footage, (5) attorney's fees at twenty percent of the judgment, and (6) increased pre- and post-judgment interest under Mexican law. Defendant challenges the latter four of those claims, without conceding the first two.

> A.    *Standard of Review*

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." RCFC 56(c)(1). The movant has the burden of showing the court that no genuine issue of material fact exists. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); *Jay v. Sec'y of Dep't of Health & Human Servs.*, 998 F.2d 979, 982 (Fed. Cir. 1993); *Consolidation Coal Co. v. United States*, 86 Fed. Cl. 384, 387 (2009). A fact is material if it "might affect the outcome of the suit," and a dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Long Island Sav. Bank, FSB v. United States*, 503 F.3d 1234,

---

[8] After soliciting input from the parties, the Court had selected an additional, neutral expert to provide an opinion on Mexican law. *See* Order of July 8, 2010; Order of Oct. 22, 2010. Plaintiff raised a number of objections to this expert. *See* Order of Dec. 1, 2010. After discussing the matter with the parties, the Court decided not to use a third expert. *See* Order of Dec. 13, 2010.

1244 (Fed. Cir. 2007).   Once the movant has made such a showing, the nonmovant must show that a genuine issue does, in fact, exist.  *M. Maropakis Carpentry, Inc. v. United States*, 609 F.3d 1323, 1327 (Fed. Cir. 2010); *Consolidation Coal*, 86 Fed. Cl. at 387.   To do so, the nonmovant may use affidavits and other evidence but may not rely on "[m]ere denials or conclusory statements."  *Barmag Barmer Maschinenfabrik AG v. Murata Mach., Ltd.*, 731 F.2d 831, 836 (Fed. Cir. 1984).   In its review of the record and the parties' arguments, a court must draw all reasonable factual inferences and presumptions in favor of the nonmovant.  *Anderson*, 477 U.S. at 255; *Barmag Barmer*, 731 F.3d at 836.

B.      *Foreign Law*

The use of foreign law in the Court of Federal Claims is governed by RCFC 44.1.[9]   To determine the application of a foreign law, that rule allows a judge to consider "any relevant material or source, including testimony, whether or not submitted by a party or admissible under the Federal Rules of Evidence." RCFC 44.1; *see also Al-Kurdi v. United States*, 25 Cl. Ct. 599, 603 (1992) (discussing the application of foreign law in the United States Claims Court).  The rule also provides that "[t]he court's determination must be treated as a ruling on a question of law."  *Id.*   Courts frequently consider the testimony of experts on foreign law, as well as the actual text of the foreign legal material.  *See Access Telecom v. MCI Telecomms. Corp.*, 197 F.3d 694, 713 (5th Cir. 1999).

A court may also conduct its own independent research, and some courts have criticized heavy reliance on expert testimony, when a court is capable of doing its own research.  *See Bodum USA, Inc. v. La Cafetière, Inc.*, 621 F.3d 624, 633–34 (7th Cir. 2010) (Posner, J., concurring) (noting that judges are not justified "in relying on paid witnesses to spoon feed them foreign law that can be found well explained in English-language treatises and articles. . . . It is excusable only when the foreign law is the law of a country with such an obscure or poorly developed legal system that there are no secondary materials to which the judge could turn").  *But see id.* at 638–39 (Wood, J., concurring) (supporting the use of experts and noting that "[e]xercises in comparative law are notoriously difficult, because the U.S. reader is likely to miss nuances in the foreign law, to fail to appreciate the way in which one branch of the other country's law interacts with another, or to assume erroneously that the foreign law mirrors U.S. law when it does not").

Although RCFC 44.1 allows a court to conduct its own research into foreign law, the rule imposes no duty to do so.  *See Bel-Ray Co., Inc. v. Chemrite Ltd.*, 181 F.3d 435, 440 (3d Cir. 1999); *McGhee v. Arabian Am. Oil Co.*, 871 F.2d 1412, 1424 n.10 (9th Cir. 1989) ("[N]othing requires the court to conduct its

---

[9] RCFC 44.1 is identical to its counterpart in the Federal Rules of Civil Procedure. *See* RCFC 44.1 Rules Committee Note (2008).   Precedent interpreting Federal Rule 44.1 is therefore relevant to the interpretation of RCFC 44.1.

own research into obscure sources."); ***Carey v. Bahama Cruise Lines***, 864 F.2d 201, 205 (1st Cir. 1988) (noting that the rule "does not oblige" a court "to determine foreign law on its own"). A court's right to "insist upon a complete presentation" of the foreign law at issue is unchanged by RCFC 44.1. 9A Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 2444 (3d ed. 1998).

In this case, the Court has reviewed the material submitted by the parties, which includes expert declarations, depositions, and translations. The Court has also conducted its own research into the applicable Mexican law and considered original Spanish-language excerpts of that law, as well as secondary materials.

C.    *Increases in Rent*

Though the parties agreed to $1,800 monthly rent, plaintiff now claims numerous increases to that amount. As a result of these increases, plaintiff's claimed monthly rent reaches $13,569.73 by July 2007.

1.    Multiple Ten Percent Increases in Rent are Unwarranted by Law.

Plaintiff first increases the monthly rent by ten percent for every four-month period from November 2003 through October 2007. Her arguments over the protracted litigation of defendant's motion have identified two basic, but conflicting, sources for these increases.

Initially, plaintiff argued that Articles 2384 through 2386 of the Civil Code of the State of Chihuahua applied and mandated increases in rent.[10] Código Civil del Estado de Chihuahua [C.C.C.] [Civil Code of the State of Chihuahua], arts. 2384–86, Periódico Oficial del Estado [PO], 23 de marzo de 1974 (Mex.). At oral argument, however, plaintiff admitted that these articles do not "strictly apply" but instead apply "by analogy" in conjunction with general principles of law.[11]

---

[10] *See* Maria Sandra Fernandez de Iglesias' Mem. Opp'n Def.'s Mot. Partial Summ. J. 8 [hereinafter Pl.'s Resp.] ("The applicable Mexican law is contained in the Código Civil del Estado de Chihuahua, Art. 2384, 2385 and 2386."); *id.* at 10 ("In fact, Plaintiff had a statutory obligation to agree to the extension, therefore, the initial extension requested by Defendant was granted."); Maria Sandra Fernandez de Iglesias' Mem. Support Pl.'s Opp'n Def.'s Mot. Partial Summ. J. 3 [hereinafter Pl.'s Sur-Reply] ("Mexican law prohibited the Plaintiff from denying the Defendant its extension of the lease. Plaintiff had a statutory obligation to agree to the extension, therefore, the initial extension requested by Defendant was granted.").

[11] Oral Argument at 2:38–2:39, July 8, 2010; *see also* Pl.'s First Supplemental Mem. Opp'n Def.'s Mot. Summ. J. Ex. H, at 5 [hereinafter Pl.'s Supplemental Mem.] ("Mexican judges are bound by law to resolve a case, even if there is no

a. *The Plain Language of Article 2384 Does Not Apply to this Case.*

The code sections cited by plaintiff do not strictly apply to this case. Article 2384 of the Chihuahua Civil Code provides tenants with a statutory right to extend a lease, if certain conditions are met:

> In the leasing of real property for a defined period, a tenant who is up to date in payment of rents shall be entitled to extend the lease for a term equal to the term in the contract if the tenant so requests before the expiration of the stipulated term, but such extension may not exceed one year. In such case, the lessor may increase the prior rent by up to ten percent, provided rent has not been increased within the last three months.

C.C.C., art. 2384.[12] When a tenant exercises its right under this statute, a landlord is correspondingly allowed to increase the rent by ten percent. Two conditions are necessary for a tenant to extend a lease: the tenant must be up to date in rental payments, and the request must be made before the lease expires. If these conditions are met, then a tenant may extend a lease "for a term equal to the term in the contract," but the extension may not "exceed one year." *Id.* The extension by the tenant then triggers the landlord's corresponding right to increase the rent by ten percent.

If a tenant does have the right to extend a lease, it is difficult for a landlord to prevent that extension. Article 2384 does contain a narrow exception for owners who wish to live in the house or farm the land after the expiration of a lease, and Article 2385 requires the owner to formally notify a tenant of his plan to live on or farm the leased property. Notice must be given by a judicial order sixty days prior to the expiration of the lease. Finally, Article 2386 makes an owner liable for damages if he improperly uses this exception and does not live on or farm the property.

In this case, plaintiff had no statutory obligation to extend the lease for defendant. Neither condition required for the statutory right occurred here, since defendant was delinquent in rent, and, according to plaintiff, did not request an extension until April 26, 2004, well after the lease expired on February 29, 2004.

---

applicable statute. Filling in the gaps of the law, by applying the general principles of law, such as analogy and equity, is precisely the manner in which Mexican judges form case law. When a specific issue is not specifically dealt with by statute, by applying the principle of analogy and equity, Judges identify a provision whose purpose applies to the case before them.").

[12] No official translation of the Civil Code of the State of Chihuahua is available. The Court has used the translations provided by plaintiff, when available, but also considered the applicable law in its original Spanish.

Furthermore, although plaintiff argues that the lease was extended for a period stretching over three years, the plain language of the statute limits an extension to one year.

> b.  *General Principles of Law do not Mandate Multiple Ten Percent Increases.*

In more recent arguments, plaintiff has argued that Article 2384 should apply by analogy, even though it does not strictly apply.  Plaintiff bases this claim on "general principles of law."

The Chihuahua Civil Code requires a judge to resolve a controversy even in the face of the "[s]ilence, obscurity, or insufficiency of the law."  C.C.C., art. 16.  The code also states that in civil cases "the final judgment shall be rendered pursuant to the letter of the law or its judicial interpretation, or in the absence of these two, the judgment shall be supported by the general principles of law."  C.C.C., art. 18.  These provisions are common to the civil codes of the Federal District of Mexico and all of Mexico's states.  *See* 1 Jorge A. Vargas, *Mexican Law: A Treatise for Legal Practitioners and International Investors* §1.11 n.1 (1998).  The "general principles" are found in treatises and scholarly works, and one author identifies five separate doctrinarians whose work contains general principles related to civil law to which Mexican courts might refer.  Vargas, *Mexican Law*, at §1.11 n.4; *see also* Edith Friedler, *Moral Damages in Mexican Law: A Comparative Approach*, 8 Loy. of L.A. Int'l & Comp. L.J. 235, 239 (1986) (noting that "[i]n civil law, legal scholars' views and treatises are treated as a primary source of law").  In ruling on Mexican law, a judge must look to the code, but "[i]f there are gaps or *lacunae* in the code (that is, there are no statutes which specifically pertain to the particular case), the judge must nevertheless decide the case, either by use of general clauses, by analogy, or by applying general principles of law."  Friedler, *Moral Damages*, at 240.  This practice of filling gaps by reference to general principles of law is common to many legal systems based on civil law.  *See* Michael P. Van Alstine, *Dynamic Treaty Interpretation*, 146 U. Pa. L. Rev. 687, 737 (1998) ("[M]any civil codes contain an express requirement that an interpreter resort to internal 'general principles' for the resolution of ambiguities in their express provisions."); *see also* Jeffrey L. Friesen, *When Common Law Courts Interpret Civil Codes*, 15 Wis. Int'l L.J. 1, 11 (1996) (noting that "when the text is not literally applicable . . . . the judge may decide on the basis of analogy or argument *a contrario* based on the logic of the legal system").

According to plaintiff, the Court should analogize to Article 2384, which is the most similar provision to what occurred in this case, and apply a ten percent increase in rent for every four-month period.  Plaintiff also claims that "because the tenant is a sovereign, [plaintiff had] no capacity to evict the tenant, and therefore by equitable principles . . . she should be entitled to a 10% increase each

time."[13]   Essentially, plaintiff argues that defendant's status as a sovereign prevented plaintiff from taking remedial action.

The Court disagrees, since the lease provided plaintiff with a means to resolve disputes against the government.  Article 15 of the lease subjects disputes to the CDA.  For claims under $50,000, the lease allows a landlord to demand a decision within sixty days.  If a landlord is dissatisfied with the decision, the lease allows appeal to the U.S. Armed Services Board of Contract Appeals or suit in the Court of Federal Claims.  Plaintiff, on August 23, 2004, submitted a formal CDA claim for $26,200 to defendant's contracting officer, and demanded a decision within sixty days.  A decision on this claim was, apparently, never reached by the contracting officer.  Under the CDA, a failure to issue a decision within the required time period is treated as a denial, which allows appeal or suit in this court.  41 U.S.C. § 605(c)(5).  Thus, plaintiff could have sued in the Court of Federal Claims as early as October 2004, but this suit was not filed until June 2008.  Plaintiff clearly had legal recourse against defendant, despite defendant's status as a sovereign.

Summary judgment is appropriate when the parties only dispute "issues of law."  ***Dana Corp. v. United States***, 174 F.3d 1344, 1347 (Fed. Cir. 1999). Defendant has shown that Article 2384 does not contemplate multiple extensions and increases in rent.  In response, plaintiff has argued that general principles of law support its position, but never discussed any particular principle other than its supposed lack of legal recourse.  The Court, however, sees no compelling reason to use general principles of law to hold defendant accountable for multiple ten percent increases of rent over a four-year period stretching until October 2007, when plaintiff had legal recourse under the CDA as early as October 2004. Plaintiff has failed to show any "genuine issues of material fact" and failed to adequately respond to defendant's showing that it is entitled to judgment; entry of summary judgment is therefore "mandate[d]."  ***Celotex Corp. v. Catrett***, 477 U.S. 317, 322–23 (1986).

Even though multiple ten percent increases are unwarranted, a *single* ten percent increase in the monthly rent may be appropriate.  The essence of Article 2384 is that a landlord can receive some compensation when a tenant unilaterally extends a lease.  According to plaintiff's expert, a Mexican court might allow a single ten percent increase in rent if a tenant fails to vacate, but multiple increases would not be allowed.[14]   In this case, defendant may have improperly held over and thus unilaterally extended the lease for a period of time.  This issue remains to be litigated.   If, in later proceedings, the Court finds that defendant did unilaterally hold over after the expiration of the lease, then a ten percent increase in the monthly rent may be appropriate.

---

[13] Oral Argument at 2:40-2:41, July 8, 2010.

[14] *See* Def.'s Reply Pl.'s Supplemental Mem. Opp'n Def.'s Mot. Partial Summ. J. Ex. 1, at 6.

D.      *A Rental Increase for a Discrepancy in Square Footage is not Warranted.*

Plaintiff also asks for an increase in rent based on her belief that rent should be increased if the actual size of a property is larger than the size mentioned in the lease. This argument, however, finds no support in plaintiff's filings, or, ultimately, the law.

The genesis of plaintiff's argument is an alleged discrepancy in the size of the leased premises. According to the lease, the property covered 1,658 square feet. Plaintiff, however, submitted an affidavit from Arturo Iglesias, who states that he has "personally measured" the house and found its total square footage to be 4,380.91 square feet.[15] Based upon this discrepancy, plaintiff proportionately increases the amount of monthly rent by approximately 264%. Unlike her claim for ten percent increases, plaintiff has not cited a statute, but only bases this claim upon general principles of law. Plaintiff has not discussed any particular general principles, but her expert has opined that a Mexican judge "would have probably granted" a rent reduction if a lease stated a larger square footage than the actual size of the property.[16] In fact, plaintiff essentially seems to be making a damages argument; in her sur-reply, she writes, "The fact that the Defendant held the property for over three years, securing it with locks and chains, kept the property under its control (under the umbrella of Diplomatic Immunity), does not obligate Plaintiff to surrender the potential economic benefit of the entire property."[17]

Even if the actual size of the residence was greater than the size stated in the lease, that discrepancy does not compel an increase in the amount of rent. The parties agreed to $1,800 monthly rent for "a house" with an exact listing of rooms. The lease never indicates that the rent was calculated on the basis of the square footage, so even assuming that the discrepancy exists, it is unclear why the Court should adjust the rent upwards. Plaintiff, moreover, accepted rent for six years without complaining of this discrepancy.

"To defeat summary judgment, the evidence as properly construed must be sufficient for a reasonable jury to find for the nonmoving party; a mere scintilla of evidence will not suffice." ***Vita-Mix Corp. v. Basic Holding, Inc.***, 581 F.3d 1317, 1323 (Fed. Cir. 2009) (citing ***Anderson***, 477 U.S. at 252). Furthermore, conclusory statements will not protect a party from summary judgment. ***Barmag Barmer***, 731 F.2d at 836. While the Court agrees that a Mexican court would rely on general principles of law, the Court is also mindful of the burdens of summary judgment. Defendant has made a showing that no law supports plaintiff's position. In response, plaintiff has only made conclusory statements about general principles of law favoring her position, but she has not cited to, discussed,

---

[15] First Supplemental Aff. Arturo Iglesias Supp. Pl.'s Opp'n Def.'s Mot. Partial Summ. J. 1.

[16] Pl.'s Resp. Ex. 1, at 8.

[17] Pl.'s Sur-Reply 4.

or applied any particular general principle of law.[18]   Stating that general principles support your position is a conclusion, not an explanation, and more than a mere conclusion is required to survive summary judgment.

      E.       *The EAJA Governs Attorney's Fees.*

Defendant also moves for summary judgment on the amount of attorney's fees.  While plaintiff's complaint claimed fees under Mexican law at 20% of the judgment, plaintiff's response and statements by her expert claimed fees at 10% under domestic law.  Plaintiff recently moved to amend her complaint to only seek fees under the Equal Access to Justice Act ("EAJA").  28 U.S.C. § 2412 (2006).  Defendant also argues that domestic law applies to any fees that may be due, and the Court agrees.

The only fees plaintiff could recover are those from the EAJA.  The general "American Rule" for attorney's fees requires each party to bear its own fees, unless a statute, such as the EAJA, provides otherwise.  *See **Hensley v. Eckerhart***, 461 U.S. 424, 429 (1983); ***Filtration Dev. Co. v. United States***, 63 Fed. Cl. 612, 615 (2005).  The EAJA partially waives sovereign immunity for fees in order to ease the burden of challenging unreasonable government action.  *See **Filtration Dev. Co.***, 63 Fed. Cl. at 615–16.  As a waiver of sovereign immunity, the EAJA must be "strictly construed" in favor of the government.  ***Ardestani v. INS***, 502 U.S. 129, 137 (1991).

An application for fees under the EAJA must be filed with the Court within 30 days of final judgment, 28 U.S.C. § 2412(d)(1)(B), and include an "itemized statement" showing the amount of fees incurred.  *Id.*; *see also **Astrue v. Ratliff***, 130 S. Ct. 2521, 2526–27 (2010).  No such application is yet before the Court, however, and it would be premature to determine whether or not fees should be awarded.  In any event, plaintiff has not cited a single source of law that would entitle her to legal fees in the amount of 10% of the judgment, and defendant thus merits summary judgment on this issue.

      F.       *The Lease Governs Judgment Interest.*

The lease set the rate of judgment interest at the standard CDA rate, but plaintiff asserts that Mexican law applies and allows for a higher rate of interest.  The United States is only obligated to pay interest on a judgment in this court when it has "expressly" agreed to do so in a contract or when an Act of Congress so requires.  28 U.S.C. § 2516(a); *see also **Cal. Fed. Bank v. United States***, 395 F.3d 1263, 1273 (Fed. Cir. 2005).  Defendant thus argues that the only allowable interest is that under the CDA.

---

[18] The only mention of specific general principles was made in an affidavit by plaintiff's expert, who lists "separation of powers, due process, Analogy, Equity, [and] Justice" but does not discuss these principles or cite to any sources for them. Pl.'s Supplemental Mem. Ex. H, at 5.

The contract discusses judgment interest and governing law in two different sections. Article 15(E) of the lease specifies that "[t]he TENANT shall pay interest on the amount found due and unpaid . . . .  at the rate, fixed by the U.S. Secretary of the Treasury as provided in the [Contract Disputes Act.]"[19]  The lease also contains a general provision in Article 16 that states that the "terms of this lease shall be construed in accordance with" Mexican law.  *Id.*  Defendant argues based upon Article 15 that plaintiff is limited to CDA interest, while plaintiff uses Article 16 to argue that Mexican law applies to the amount of interest she is due.  The relevant legal interest in Mexico is set at nine percent. C.C.C., art. 2291.  Plaintiff, however, asserts that a court may increase this upon a showing of bad faith or "if the claimant is able to show that she has been deprived of her ability to obtain a greater income had she been in a position to lease the property to another tenant."[20]  No code provisions or principles of law have been cited to bolster this argument.

Interpretation of a contract is an issue of law, and three rules of interpretation are relevant here.  First, courts use the interpretation of a contract that gives words their normal, reasonable meaning. *See **Dalton v. Cessna Aircraft Co.**,* 98 F.3d 1298, 1305 (Fed. Cir. 1996).  Second, when interpreting a contract, ambiguities will generally be construed against the drafter of the contract.  *See **LAI Servs., Inc. v. Gates**,* 573 F.3d 1306, 1315–16 (Fed. Cir. 2009).  Third, if a contract contains both general and specific terms that are in any way inconsistent, the specific terms control.  *See **Dalton**,* 98 F.3d at 1305.

Under these rules of contract law, the contract only allows—and the government is only obligated to pay—interest at the CDA rate.  The reasonable meaning of Article 15(E) is that the United States ("[t]he TENANT") must pay interest on any judgment ("the amount found due and unpaid") at the rate set by the Secretary of the Treasury for the CDA.  Furthermore, the general language of Article 16 and the specific language of Article 15 do not conflict with each other and do not create any ambiguities.  While Article 16 generally specifies that Mexican law governs construction of the terms of the contract, Article 15 specifically deals with the amount of judgment interest.  The specific language of Article 15 controls.  The government must "expressly" agree to be subject to interest on a judgment in this Court, 28 U.S.C. § 2516(a), and the only express agreement in the lease is for CDA interest.  Defendant is thus entitled to summary judgment concerning the amount of interest.

---

[19] Compl. Ex. 1, at 5.
[20] Pl.'s Resp. 13.

III.     Plaintiff's Motion to Amend Her Complaint

Plaintiff recently has sought leave of Court to amend her complaint and add new factual and legal material, and defendant opposes these amendments. Under RCFC 15, a party may amend its complaint once, without leave of court, if the amendment is made within twenty-one days of service of the answer. After that initial period, however, a party must seek leave of court or written consent of the opposing party. In this case, the answer was served over two years ago, on October 3, 2008, and leave of Court is required.

A court's decision on whether or not to give leave to amend falls squarely within the discretion of the court. *See Foman v. Davis*, 371 U.S. 178, 182 (1962). Leave is generally to be "freely give[n] . . . when justice so requires," RCFC 15(a)(2), but a court is not required to grant leave. A court may deny leave if, for instance, there is undue delay in moving to amend, if the movant has exhibited "bad faith or dilatory motive," if the opposing party would be unduly prejudiced, or if an amendment would be futile. *Foman*, 371 U.S. at 182 (interpreting Federal Rule of Civil Procedure 15, on which RCFC 15 is based). A party faced with a possible denial based on futility "must demonstrate that its pleading states a claim on which relief could be granted, and it must proffer sufficient facts supporting the amended pleading that the claim could survive a dispositive pretrial motion." *Kemin Foods, L.C. v. Pigmentos Vegetales Del Centro S.A. de C.V.*, 464 F.3d 1339, 1354–55 (Fed. Cir. 2006).

Two of plaintiff's amendments relate directly to the issues raised in defendant's motion, and the Court denies both due to the needless delay they could cause in the resolution of that motion. First, plaintiff seeks attorney's fees under the EAJA. As discussed above, plaintiff had previously sought fees under various bases, but the EAJA is the only appropriate basis. Given this holding, allowing amendment is unnecessary; the issue is resolved. Second, plaintiff proposes amending her complaint to seek interest not only under the lease, which allows for CDA interest, but also under Mexican law. As discussed above, the only interest to which plaintiff may be entitled is the CDA interest, outlined in Article 15 of the lease. Allowing an amendment inconsistent with that holding is unnecessary.

Plaintiff also seeks to add claims that appear to be beyond the scope of this Court's jurisdiction, and addition of these claims would likely be futile. The amended complaint demands damages for medical treatment, insult to reputation, emotional distress, and mental anguish, and essentially asserts that defendant's conduct caused plaintiff to suffer a massive stroke and incur numerous medical expenses. The Court of Federal Claims is, however, specifically barred from hearing claims "sounding in tort." 28 U.S.C. § 1491(a)(1). It is true that the court can hear a claim for tortious conduct that "stems from a breach of contract," but the cause of such action must be "ultimately one arising in contract." *Awad v. United States*, 301 F.3d 1367, 1372 (Fed. Cir. 2002). A plaintiff must be able to

"show a connection" between the allegedly tortious conduct and the specific "contractual obligations" of the government. ***L'Enfant Plaza Props., Inc. v. United States***, 645 F.2d 886, 892 (Ct. Cl. 1981). It is insufficient for a claim to merely be "related" to the breach of contract. *Id.*

The Court of Federal Claims, furthermore, cannot award damages "grounded in tort rather than contract." ***Pratt v. United States***, 50 Fed. Cl. 469, 482 (2001). Damages for a contract breach are only recoverable where: "(1) the damages were reasonably foreseeable by the breaching party at the time of contracting; (2) the breach is a substantial causal factor in the damages; and (3) the damages are shown with reasonable certainty." ***Ind. Mich. Power Co. v. United States***, 422 F.3d 1369, 1373 (Fed. Cir. 2005). This court has no general jurisdiction to award damages for emotional distress, pain and suffering, or mental anguish. *See* ***Mastrolia v. United States***, 91 Fed. Cl. 369, 381 (2010); ***Pratt***, 50 Fed. Cl. at 482 (citing ***Bohac v. Dep't of Agric.***, 239 F.3d 1334, 1339 (Fed. Cir. 2001)). The amended complaint also alleges damages stemming from the violation of Mexican federal criminal law, but the Court of Federal Claims lacks jurisdiction over criminal claims. *See, e.g.*, ***Joshua v. United States***, 17 F.3d 378, 379 (Fed. Cir. 1994).

As to any amendments that may remain and that have not been addressed here, the Court denies plaintiff's motion to amend without prejudice. If plaintiff wishes to amend her complaint to allege additional facts or to add new claims over which the Court does have jurisdiction, plaintiff may, before trial, file another motion to amend her complaint. Such motion shall be consistent with this opinion and include a copy of the proposed amendments. Any proposed amendments that relate to allegedly tortious conduct must show the "connection" between the conduct and the "contractual obligations" of the government under the lease. *See* ***L'Enfant Plaza***, 645 F.2d at 892.

IV.   Conclusion

For the above stated reasons, Defendant's Motion For Partial Summary Judgment is GRANTED as to plaintiff's claims for multiple ten percent increases in rent, an increase in rent due to the alleged discrepancy in square footage, and the claims for attorney's fees and judgment interest. The Court, however, DENIES summary judgment on the issue of a ten percent increase in the monthly rent. Furthermore, Plaintiff's Motion For Leave To File Plaintiff's First Amended Original Complaint is DENIED, as outlined above.

Defendant's motion for partial summary judgment did not challenge plaintiff's claim for unpaid rent from November 2003 through October 2007 or plaintiff's claim for unpaid utilities for that period. These two issues remain to be litigated, and the parties are encouraged to attempt to amicably resolve them. If needed, they may avail themselves of the alternative dispute resolution services available in this court. *See* RCFC Appendix H.

If the parties are unable to amicably resolve this matter, they shall file a Joint Status Report by February 8, 2011 indicating a schedule of further proceedings.

IT IS SO ORDERED.

<u>**s/Bohdan A. Futey**</u>
**BOHDAN A. FUTEY**
**Judge**